UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| MTS NORTH AMERICA, INC., | Civil Action No. 20- |
| Plaintiff, | **Honorable** |
| v. | |
| TESLA MOTORS, INC. (USA), | |
| Defendant. | |

**COMPLAINT**

Plaintiff MTS North America, Inc. ("MTS"), through its undersigned attorneys, states the following as its Complaint against Defendant Tesla Motors, Inc. (USA) ("Tesla"):

**INTRODUCTION**

1. This action arises out of Tesla's failure to pay MTS for work MTS performed and materials purchased at Tesla's request and direction in connection with the production and testing by MTS of certain production stacking columns for the Tesla M3 Back Light Glass Panel.

## PARTIES AND JURISDICTION

2. MTS a Michigan corporation with a principal place of business in Macomb, County, Michigan. MTS is a leading manufacturer of automotive stacking systems.

3. Defendant Tesla is a California corporation general partner with its principal place of business in Fremont, California. Tesla specializes in electric vehicle manufacturing.

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the amount in controversy greatly exceeds $75,000, exclusive of interest and costs, and the dispute is between entities of different states.

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) because Tesla conducts business in this district, and a substantial part of the events or omissions giving rise to these claims occurred in this district.

## FACTUAL BACKGROUND

6. Pursuant to Tesla's request, on February 23, 2017, MTS issued a Quotation to Tesla for the design and manufacture of a prototype for stacking columns i.e. tower racks for storage and shipment of the Tesla M3 Back Light Glass Panels for the Tesla Model 3, an electric four-door sedan developed by Tesla.

7. These stacking columns/tower racks (the "Tower Racks") are uniquely developed by MTS to aid in the storage during transportation of the glass panels which are ultimately incorporated in the roof of a Tesla Model 3.

8. On March 8, 2017, Tesla caused to be issued a Purchase Order to MTS in response to the February 23, 2017 Quotation.

9. The design was tested and approved by Tesla and Tesla remitted payment to MTS for same.

10. Thereafter, Tesla notified MTS that it had urgent plans to launch the Tesla Model 3 in the upcoming months and therefore Tesla requested MTS to *immediately* begin the manufacturing process for continuous shipments of the Tower Racks especially in light of the fact that the manufacturing process takes approximately 8-10 weeks.

11. Thereafter, pursuant to Tesla's written request on June 28, 2017 (**Exhibit A**), on June 30, 2017, MTS provided a quotation for the production of 1,167 sets of the stacking columns for the Tesla M3 Back Light Glass Panel (**Exhibit B**). This was the original forecasted fleet of Tower Racks.

12. On July 27, 2017, MTS and Tesla had a conference call wherein Tesla requested MTS to expedite the production in order to meet the September requirements and Tesla's support curve. Tesla further confirmed that a purchase order would be issued.

13. On July 27, 2017, Tesla, through Nihal Basusta, confirmed that MTS should continue with production wherein Tesla stated, in relevant part, that: "*MTS to have 50 sets [of the Tower Racks] ready on September 8; MTS to have 50 sets/week until remainder production order quantity is fulfilled.*" (**Exhibit C**).

14. MTS promptly confirmed in writing that it would proceed to meet those requirements of Tesla. (**Exhibit D**).

15. According to Tesla, timing was critical. Therefore, in order to meet Tesla's support curve and based upon Tesla's promises to issue a purchase order in relation to the 1,167 sets of the Tower Racks, MTS immediately began the production process including purchasing the necessary materials – all of which was approved and expected by Tesla.

16. Tesla then revised its needs for the Tower Racks down to 871 sets. To that end, on August 27, 2017, MTS issued a revised Quotation which decreased the sets from 1,167 to 871. (**Exhibit E**).

17. Even though MTS already committed to producing 1,167, as reduced to 871 sets, and purchased the materials for same, on August 29, 2017, during a Zoom telephone conference call with MTS, Tesla verbally decreased the number of sets of Tower Racks from 871 sets to 500 sets and requested MTS to continue with production in order to meet Tesla's support curve.

18. The decrease from 871 sets of Towers Racks to 500 sets of Tower Racks was confirmed in correspondence from MTS to Tesla dated August 31, 2017 wherein Robert Priebe, on behalf of MTS, states to Tesla as follows, in relevant part:

- *MTS is building to a delivery plan of (50) Tower Racks being completed by 9/8/17*
- *MTS was released to build (50) sets per week starting 9/22 until complete with (871) Rack Sets*
- *With delivery of (871) Sets being delivered not prior to the end of November (500-need confirmation from Tesla) is the new required fleet*
- *MTS if evaluating associated costs going from an original 1171 quoted fleet to 871 Fleet to now a fleet of 500*
- *MTS is re-designing the current pack to include a 6th Tower...*
- *MTS requires a PO from either Precision or Tesla, or a letter of intent for the New Required Fleet*

**(Exhibit F).**

19. Thereafter, Tesla then again reduced the requested number of Tower Rack sets from 500 to 400 sets.

20. In response and while it was already in the process of producing the Tower Racks sets for months, on September 12, 2017, MTS issued another revised Quotation which reflected the decrease in the number of Tower Rack sets from 500 to 400. (**Exhibit G**).

21. Further, MTS confirmed the final decrease to 400 sets in its correspondence dated September 19, 2017 to Tesla wherein MTS, through Robert Priebe, stated as follows, in relevant part:

- *MTS will have (15) Sets of Towers (5 Towers per Rack) ready for pickup on 9/22 (with a PO in place by then)*

- *The remaining 35 sets of Towers will be ready for pickup 1 week later (9/29)*
- *The next (50) sets of pieces and parts are due in next week, we will hold on assembly until to PO for the (350) Sets arrives.*
- *MTS will have a response on whether there are sunk costs going from 871 to 400 sets by 9/22*
- *MTS had not received PO or Release to Product the (6th) Tower*
- *We will support the build event for watch the racks go through the automated system and unload process. Please confirm back dates.*

(**Exhibit H**).

22. As stated above, on August 31, 2017 and September 19, 2017, MTS informed Tesla in writing that MTS incurred costs as a result of the reduction of sets to 400 which Tesla acknowledged on September 19, 2017 wherein Patrick Gallagher stated, "*[h]opefully sunk costs are a minimum...Please let me know what that is as soon as you can as I am meeting with our CFO tomorrow to get the funding approved. Hope it is next to nothing...*" (**Exhibit I**).

23. Tesla did not deny responsibility for the sunk costs. Instead, Tesla's correspondence in response to MTS's notification of the existence of sunk costs (and thereafter) reaffirmed Tesla's need and desire for MTS to produce the Tower Racks in the strict time frame allotted by Tesla even though Tesla had yet to issue a purchase order.

24. Despite this, MTS diligently attempted to mitigate its costs and damages resulting from Tesla's various reductions in the number of sets by, for example, immediately contacting its suppliers. However, MTS already process sub-

6

assemblies and purchased materials which could not be returned or utilized for other customers. Therefore, not all costs were recoverable.

25. On September 21, 2017, MTS informed Tesla of the associated sunk costs which amounted to approximately $120,000. MTS further informed Tesla that it would retain the completed pieces and parts for Tesla's use when/if volumes go up and more racks are required. Further, MTS, through Robert Priebe, stated as follows: "[*s]orry for the costs' [sic], but when you break it down it is less than 8% of the total we were working towards. We really put a full press on getting these done for Tesla. I will forward the list of details once complete.*"

26. During this time, Tesla and MTS were in continual communication and had various conference calls and exchanged various emails providing direction, timing associated with deliveries, next steps, and Tesla's expectations.

27. At no point in time did Tesla request MTS to halt production of the Tower Racks. Instead, Tesla continued to emphasize its support curve and the urgency of production.

28. Therefore, in reliance on Tesla's assurances, MTS continued with the project and the production of 400 sets of Tower Racks.

29. Thereafter, on October 5, 2017, Tesla caused to be issued a Purchase Order to MTS for the first 50 sets of the Tower Racks. On or about October 11, 2017,

MTS certified the 50 sets of Tower Racks and delivered same. Tesla made payment on this Purchase Order.

30. However, this Purchase Order did not account for the 871 sets that MTS already began processing, which were ultimately reduced to 400 sets at MTS's expense.

31. On April 8, 2019, Tesla issued a Purchase Order to MTS for testing an updated sample. The sample was considered a success and Tesla remitted payment in full to MTS in relation to this Purchase Order.

32. Despite the fact that Tesla caused to be issued three purchase orders after work had been started and/or completed by MTS in the past, including the March 8, 2017, October 5, 2017 and April 8, 2019 purchase orders, Tesla continues to ignore MTS's requests for the issuance of a Purchase Order in relation to the Tower Racks which were ultimately reduced to 400 sets.

33. Further, even though Tesla is aware that the Tower Racks have passed testing and MTS has been willing and able, at MTS's own expense, to live ship same, Tesla continued to ignore MTS.

34. For example, again on April 24, 2019, MTS, through Robert Priebe, requested an update relating to this project. In response, Madeline Mott from Tesla stated, *"[t]hanks for following up. I am prioritizing more immediate and time-*

*sensitive projects at this moment, but will keep the backlight returnable on my radar. I will touch base with you when we can pick it up again.*" (**Exhibit J**).

35. Further, Tesla never denied (a) the agreement between the parties for the production of the Tower Racks or (b) its responsibility to remit payment for same.

36. Therefore, MTS escalated this issue to its legal counsel who issued a demand letter to Tesla on September 16, 2019. (**Exhibit K**).

37. Tesla's legal counsel responded to the demand letter and various information was provided by MTS's counsel to Tesla's counsel which fully substantiated MTS's request for payment. At no point during these conversations did Tesla deny or suggest that it did not owe MTS the monies requested associated with the Tower Racks.

38. Legal counsel for the parties agreed to have the business representatives from each company re-engage directly in an attempt to reach a resolution.

39. To that end, Robert Priebe with MTS reached out to Tesla's business representatives in an attempt to reach an amicable resolution.

40. For example, on February 17, 2020, Robert Priebe, on behalf of MTS, provided Tesla with a detailed sunk cost excel spreadsheet and also outlined in his email some of the remaining associated costs including (a) materials MTS has procured and on-site at MTS, (b) the associated design cost which was requested by

Tesla but never implemented, (c) the storage costs of the pieces and parts to build complete towards which have been stored at MTS for approximately two (2) years, (d) updated prototypes that passed testing but were never picked up or reviewed by Tesla.

41. Initially Tesla responded to MTS. However, despite MTS's good faith efforts to reach a resolution, which was substantiated by detailed information and documentation, Tesla has not responded to MTS since April 2020.

42. Despite demand, Tesla has failed and/or refused to pay MTS for the parts in production for which there is no other use and the other goods and services provided by MTS.

43. As a result of Tesla's actions and omissions, MTS has suffered significant damages in excess of $546,276.80, plus related consequential and incidental damages, including lost profits.

## COUNT I
## BREACH OF CONTRACT

44. MTS incorporates by reference all of the preceding paragraphs of this Complaint as though fully set forth herein.

45. The parties, through their actions and contracts, recognized the existence of a contract for the supply and purchase of the Tower Racks (the "Contract") at a fixed price indicated in the Quotations. *See* **Exhibits B, G, E.** The

contract between MTS and Tesla is enforceable pursuant to, *inter alia*, MCL 440.2202, 440.2204, 440.2206, and 440.2207.

46. MTS has satisfied its obligations under the parties' Contract.

47. Tesla breached the Contract by refusing to pay for the Tower Racks it ordered. Further, Tesla failed to act in good faith and in a manner consistent with sound commercial practice.

48. Tesla is not justified in failing to pay MTS for the Tower Racks which it ordered and which MTS worked tirelessly to produce in accordance with Tesla's supply curve.

49. As a result of the Tesla's actions and omissions, MTS has suffered significant damages in excess of $546,276.80, plus related consequential and incidental damages, including lost profits, plus costs, interest and attorney's fees.

WHEREFORE, MTS respectfully requests that this Court enter judgment in its favor and award damages in an amount as the Court may deem just in excess of $546,276.80, plus all incidental and consequential damages, interest, costs and attorneys' fees incurred, and grant such other relief as this Court deems just and equitable.

## COUNT II
## PROMISSORY ESTOPPEL

50. MTS incorporates by reference all of the preceding paragraphs of this Complaint as though fully set forth herein and this claim serves as an alternative claim to Claims I and III.

51. Based upon Tesla's requests and promises to remit payment to MTS, MTS began producing the Tower Racks which included, for example, purchasing and storing materials unique to the Tower Racks at MTS' facility.

52. Tesla clearly and unambiguously promised, through its representations, conduct, acts and omissions, that it would compensate MTS in relation to the design, production and testing of the Tower Racks.

53. Tesla should have reasonably expected that its promises, representations and/or conduct would induce MTS to believe that MTS was awarded the project to produce the Tower Racks which led MTS to, for example, (a) continue to spend significant time and resources on production of the Tower Racks, and, (b) spend significant sums of its own resources on significant expenses relating to the testing of the Tower Racks.

54. Tesla's promises, representations and/or conduct did in fact cause MTS to rely on them in that MTS made the decision to *solely* incur significant expenses, understanding that MTS would be compensated for the time and resources it incurred in relation to the Tower Racks.

55. MTS only agreed to incur such expenses with the understanding and expectation from Tesla that MTS would be compensated for all expenses incurred in relation to the Tower Racks.

56. MTS has relied, to its detriment, on Tesla's promises, representations and/or conduct and has thus suffered damages as a result.

57. As a result of the Tesla's actions and omissions, MTS has suffered significant damages in excess of $546,276.80, plus related consequential and incidental damages, including lost profits plus costs, interest and attorney's fees.

WHEREFORE, MTS respectfully requests that this Court enter judgment in its favor and award damages in an amount as the Court may deem just in excess of $546,276.80, plus all incidental and consequential damages, interest, costs and attorneys' fees incurred, and grant such other relief as this Court deems just and equitable.

### COUNT III
### UNJUST ENRICHMENT

58. MTS incorporates by reference all of the preceding paragraphs of this Complaint as though fully set forth herein and this claim serves as an alternative claim to Claim I and II.

59. Tesla received a benefit from MTS in the form of MTS developing, designing, producing and testing the Tower Racks.

13

60. Tesla would be unjustly enriched if Tesla continues to evade and avoid paying MTS for the damages incurred in relation to the production of the Tower Racks.

61. Tesla's actions and omissions have resulted in an inequity, as MTS has lost significant time, resources, money as a result of Tesla's actions and failure to pay MTS for same.

62. As a result of the Tesla's actions and omissions, MTS has suffered significant damages in excess of $546,276.80, plus related consequential and incidental damages, including lost profits plus costs, interest and attorney's fees.

WHEREFORE, MTS respectfully requests that this Court enter judgment in its favor and award damages in an amount as the Court may deem just in excess of $546,276.80, plus all incidental and consequential damages, interest, costs and attorneys' fees incurred, and grant such other relief as this Court deems just and equitable.

## COUNT IV
## FRAUD/MISREPRESENTATION

63. MTS incorporates by reference all of the preceding paragraphs of this Complaint as though fully set forth herein.

64. Tesla intentionally made representations of material facts to MTS including representations that Tesla would issue a purchase order to MTS and pay MTS for all costs incurred in relation to the Tower Racks.

14

65. The representations were false when made.

66. Tesla knew that the representations were false when it made them, or Tesla made the representations recklessly.

67. Tesla made the representations with the intent that MTS would rely on them.

68. MTS relied on Tesla's representations.

69. MTS has been damaged in an amount in excess of $546,276.80 as a result of Tesla's representations.

WHEREFORE, MTS respectfully requests that this Court enter judgment in its favor and award damages in an amount as the Court may deem just in excess of $546,276.80, plus all incidental and consequential damages, interest, costs and attorneys' fees incurred, and grant such other relief as this Court deems just and equitable.

## COUNT V
## SILENT FRAUD

70. MTS incorporates by reference all of the preceding paragraphs of this Complaint as though fully set forth herein.

71. Based upon Tesla's requests and promises to remit payment to MTS, MTS began producing the Tower Racks which included, for example, purchasing and storing materials unique to the Tower Racks at MTS' facility.

72. Tesla failed to disclose to MTS that it did not intend to pay MTS in relation to the Tower Racks, nor had a reasonable expectation to do so.

73. When Tesla failed to disclose to MTS that it did not intend to issue a purchase order to Tesla and did not intend to pay for the Tower Racks, it knew that the failure to disclose said facts would create a false impression.

74. When Tesla failed to disclose the above facts to MTS, Tesla intended that MTS rely on the resulting false impression.

75. MTS relied on the false impression.

76. As a result, MTS has been damaged in the amount of $265,852.58.

WHEREFORE, MTS respectfully requests that this Court enter judgment in its favor and award damages in an amount as the Court may deem just in excess of $546,276.80, plus all incidental and consequential damages, interest, costs and attorneys' fees incurred, and grant such other relief as this Court deems just and equitable.

Respectfully submitted,

By: */s/ Lyndsay S. Ott*
WARNER NORCROSS + JUDD LLP
Lyndsay S. Ott (P72949)
lott@wnj.com
45000 River Ridge Drive, Suite 300
Clinton Twp., Michigan 48038
Tel.: 248-784-5080
*Attorneys for Plaintiff*

20284503